## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

ELIZABETH WOOD, Individually and on Behalf of All Others Similarly Situated,

          Plaintiff,

vs.

IC SYSTEM INC. and MASON COMPANIES INC.,

          Defendant.

Case No.: 18-cv-780

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.    This action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2.    The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.    Plaintiff Elizabeth Wood ("Wood") is an individual who resides in Milwaukee County. Plaintiff is a citizen of the State of Wisconsin.

4.    Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff debts allegedly incurred for personal, family or household purposes, namely medical debts.

5.    Plaintiff is a "customer" as that term is defined in Wis. Stat. § 421.301(17), because Plaintiff obtained financing from Defendant Mason Companies, Inc. for personal, family or household purposes.

6.    Defendant IC System, Inc. ("ICS") is a foreign business corporation with its principal offices located at 444 Highway 96 East, P.O. Box 64444, St. Paul, Minnesota 55164.

7.    ICS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.    ICS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.    ICS is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10.    ICS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

11.    Defendant Mason Companies, Inc. ("Mason") is a Wisconsin corporation with its primary place of business at 1251 1st Avenue, Chippewa Falls, Wisconsin 54729.

12.    Mason does business under the fictitious or trade name "K. Jordan."

13.    Mason is a retailer of home goods, operating primarily over the internet and through catalog sales.  K. Jordan is one of several brand names associated with Mason.  Others include "Figi's," "Stoneberry," and "ShoeMall."

14.    K. Jordan offers store credit to consumers.   https://www.kjordan.com/customer-service/faqs/detail/kjordan-credit-terms/_/A-1544.

15.    Mason is a debt collector as that term is defined in Wis. Stat. § 427.103. Mason routinely conducts debt collection activities with respect to debts owed by Wisconsin citizens.

16.    Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

17.    On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

18.    Wis. Stat § 427.103(2) states: " 'Debt collection' means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

19.    Mason is a "merchant" as defined in the WCA, as the alleged debt arises from use of Plaintiff's consumer credit account.  Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

20.    The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

21.    The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

3

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

14. Mason is a "debt collector" as defined in Wis. Stat. § 427.103(3).

# FACTS

### *Mason's August 13, 2017 Letter*

22. Plaintiff entered into one or more consumer credit transactions with Mason for the purchase of home goods from Mason-brand retailer K. Jordan.

23. All purchases were for personal use. Plaintiff did not buy anything from Mason for resale or for any business purpose.

24. On or about July 28, 2017, Mason mailed an account statement to Plaintiff regarding her alleged K. Jordan debt. A copy of this account statement is attached to this complaint as Exhibit A.

25. Exhibit A states:

| | |
|---|---|
| Account Number | ████0812-B2 |
| New Balance | $132.29 |
| Payment Due Date | 08/25/2017 |
| Minimum Payment Due | $55.96 |

Exhibit A.

26. Exhibit A also states:

**Payment information**

If you would like information about credit counseling services, call 1-877-388-7280.

| New Balance $132.29 | Payment Due Date 08/25/2017 | Minimum Payment $55.96 |
|---|---|---|

Exhibit A.

27. Exhibit A states that, as of July 28, 2017, Plaintiff's account ending in 0812-B2 had a "New Balance" of $132.29, with a "Minimum Payment Due" of $55.96 and a "Payment Due Date" of August 25, 2017.

4

28.     On or about August 13, 2017, Mason mailed a debt collection letter to Plaintiff regarding the same alleged K. Jordan credit account as described in <u>Exhibit A</u>. A copy of the letter is attached to this complaint as <u>Exhibit B</u>.

29.     Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

30.     Upon information and belief, <u>Exhibit B</u> is a form debt collection letter, used by Mason to attempt to collect alleged debts.

31.     <u>Exhibit B</u> states:

<pre>
                    08/13/2017
Account Number:     ████0812-B2
Account Balance:    $147.29

Past Due Amount:    $147.29
</pre>

<u>Exhibit B</u>.

32.     <u>Exhibit B</u> also contains a payment remittance slip, which states:

<pre>
Account Number:     ████0812-B2
Account Balance:    $147.29
Past Due Amount:    $147.29
Please Pay Now
</pre>

<u>Exhibit B</u>.

33.     <u>Exhibit B</u> further states:

You leave us no choice at this time, but to forward your account to a collection agency unless payment of $147.29 is received within ten days.

<u>Exhibit B</u>.

34.     <u>Exhibit B</u> states that, as of August 13, 2017, Plaintiff's account ending in 0812 had an account balance of $147.29, the entirety of which was past due.

5

35.     Exhibit B further states that, unless Plaintiff paid the entire account balance, Mason would forward the account to a third-party debt collector.

36.     Plaintiff never received any communication from a third-party debt collector regarding her K. Jordan credit account.

37.     Upon information and belief, Mason did not engage a third-party debt collector regarding Plaintiff's K. Jordan credit account.

38.     On or about August 25, 2017, Mason mailed an account statement to Plaintiff regarding her alleged K. Jordan credit debt. A copy of this account statement is attached to this complaint as Exhibit C.

39.     Exhibit C states:

| Account Number | ████ 0812-B2 |
|---|---|
| New Balance | $149.18 |
| Payment Due Date | 09/25/2017 |
| Minimum Payment Due | $69.95 |

Exhibit C.

40.     Exhibit C also states:



Exhibit C.

41.     Exhibit C states that, as of August 29, 2017, Plaintiff's account ending in 0812-B2 had a "New Balance" of $149.18, with a "Minimum Payment Due" of $69.95 and a "Payment Due Date" of September 25, 2017.

42.     Exhibits A, B, and C together are false, misleading and confusing to the unsophisticated consumer.

6

43.     In <u>Exhibit A</u>, Mason informed Plaintiff that she could make a minimum payment to return her account to a current status as long as payment was made by August 25, 2017.

44.     In <u>Exhibit B</u>, mailed almost two weeks before the payment due date stated in <u>Exhibit A</u>, Mason informed Plaintiff that the entire balance of the account was "past due."

45.     In <u>Exhibit C</u>, mailed two weeks after <u>Exhibit B</u>, Mason again sought a minimum payment rather than the entire balance.

46.     Moreover, <u>Exhibit B</u> threatened that Mason would forward Plaintiff's account to a third-party debt collector unless the balance was paid within 10 days.

47.     Notwithstanding Mason's threat in <u>Exhibit B</u>, the balance was not paid within 10 days and the account was not forwarded to a third-party debt collector.

### *I.C. System's December 5, 2017 Letter*

48.     On or about November 29, 2017, Mason mailed another account statement to Plaintiff regarding her alleged K. Jordan credit debt. A copy of this account statement is attached to this complaint as <u>Exhibit D</u>.

49.     <u>Exhibit D</u> states:

CUSTOMER STATEMENT

| Account Number | ████0812-B2 |
|---|---|
| New Balance | $199.85 |
| Payment Due Date | 12/25/2017 |
| Minimum Payment Due | $111.92 |

<u>Exhibit D</u>.

50.     <u>Exhibit D</u> also states:



If you would like information about credit counseling services, call 1-877-388-7280.
New Balance   $199.85          Payment Due Date   12/25/2017          Minimum Payment   $111.92

<u>Exhibit D</u>.

51.    Exhibit D states that, as of November 29, 2017, Plaintiff's account ending in 0812-B2 had a "New Balance" of $199.85, with a "Minimum Payment Due" of $111.92 and a "Payment Due Date" of December 25, 2017.

52.    On or about December 5, 2017, ICS mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to K. Jordan.  A copy of this letter is attached to this complaint as Exhibit E.

53.    Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

54.    Upon information and belief, Exhibit E is a form debt collection letter, used by ICS to attempt to collect alleged debts.

55.    Upon information and belief, Exhibit E is the first written communication ICS mailed to Plaintiff regarding the alleged debt referenced in Exhibit E.

56.    Exhibit E contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g(a)(1), requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

NOTICE

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid.  If you notify us in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you make a request in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit E.

57.    Exhibit E also contains the following:

| ACCOUNT SUMMARY | |
|---|---|
| Creditor: K Jordan | |
| Account No: ████ 0812    B2J | |
| I.C. System Reference No: ███ 8773- | |
| Principal Due: | $94.67 |
| Finance Charges Due: | $15.18 |
| Late Charge Due: | $90.00 |
| **BALANCE DUE:** | **$199.85** |
| $0.00 has been paid since placement | |

8

Exhibit E.

58.     ICS mailed Exhibit E on or about December 5, 2017, less than a week after Mason mailed Exhibit D.

59.     Exhibit D states that Plaintiff could make a minimum payment of $111.92 and stated that this minimum payment was due December 25, 2017.

60.     Exhibit E mailed less than a week later and almost three weeks before the "Minimum Payment Due Date" stated in Exhibit D states the "BALANCE DUE" is $199.85 without referencing any minimum payment.

61.     Exhibit E is false, deceptive, misleading, and confusing to the unsophisticated consumer in that Exhibit E attempts to collect a balance that has not yet become due.  *See, e.g.,* *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector violates FDCPA if it misleads consumer as to the amount due by stating the balance, when portions of that balance are not yet due); *Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt 'owing' an amount is distinguishable from the amount 'due.'  For example, a debtor might 'owe' a certain amount on a loan, but only a portion of that amount will be 'due' at a particular time.").

62.     Moreover, Exhibit E itemizes Plaintiff's account, stating that Plaintiff owes $15.18 in "Finance Charges Due" and $90 in "Late Charge Due."

63.     Assuming Mason had chosen to accelerate the balance of the account and properly done so, neither Mason, nor ICS, could attempt to collect late charges unless the account was reinstated.  *E.g., Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) ("If, for whatever reason, the Rizzos, did not want to pay the late fees, they were free to pay the loan

9

as accelerated. Such a payment would nullify any obligation to pay post-acceleration late fees.").

64. By itemizing "finance charges" and "late charges," ICS represented to the unsophisticated consumer that ICS, or the creditor, intended to collect additional finance charges and late charges. *E.g., Tylke v. Diversified Adjustment Serv.*, 2014 U.S. Dist. LEXIS 153281, at *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.")

65. Upon information and belief, assuming Plaintiff did not make the minimum payment by December 25, 2017, Plaintiff's account would have been delinquent for 180 days, and federal regulations would have required Mason to "charge-off" Plaintiff's account as a bad debt. *See* 65 Fed. Reg. 36,903-01 (June 12, 2000).

66. Upon information and belief, Mason's policy with regard to charged-off accounts is that Mason accelerates the debt, and stops mailing statements, in which case Mason cannot collect late fees or interest. 12 C.F.R. § 226.5(b)(2)(i); *see also Ruge v. Delta Outsource Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *10-11 n. 6.

67. A debt collector makes a materially false statement when it represents that an account was subject to the addition of interest and late fees even though neither the creditor nor the debt collector actually could or intended to collect interest or fees. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 370 (7th Cir. 2018) (false statement that debt was subject to interest, late fees, and other charges violated the FDCPA where the debt was subject to interest but not late fees or other charges); *Ruge v. Delta Outsource Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *10-11 n. 6 ("the fact that Delta was *permitted* to charge interest does not make its dunning

10

letter truthful, because it never *intended* to assess interest on Ruge's account, so any suggestion that it might was false.") (emphasis added).

68.     Where more than half of the account is the result of late fees and finance charges that will no longer accrue, the implication that they are still accruing is unquestionably material to the consumer's prioritization of her debts.  *See, e.g., Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 748 (E.D. Mich. July 12, 2017) ("An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives.") (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir. 2015), *rev'd on other grounds*, *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)); *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process[.]").

69.     Plaintiff was confused by the different amounts listed on Exhibits A-E, and had no idea why the amount due was apparently subject to confusing and unexplained variation.

70.     The unsophisticated consumer would be confused by the different amounts listed on Exhibits A-E, and had no idea why the amount due was apparently subject to confusing and unexplained variation.

71.     Plaintiff was deceived, misled, and confused by Exhibits A-E.

72.     Plaintiff had to spend time and money investigating Exhibits A-E and the consequences of any potential responses to Exhibits A-E.

73.     Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibits A-E.

11

### The FDCPA

74.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25,

12

2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

75. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

76.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

77.     15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of— the character, amount, or legal status of any debt.

78.     15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

79.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

80.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

81.     15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

82.     U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt

14

### The WCA

83.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

84.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

85.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

86.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

87.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

88.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See*

Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

89.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

90.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

91.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

92.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

93.     The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

94.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

16

95.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

96.     Count I is brought against ICS.

97.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

98.     Prior to sending Exhibit E, ICS was aware that Mason had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $111.92 and a "Payment Due Date" of December 25, 2017.

99.     ICS represented to Plaintiff that Plaintiff's Mason account had been accelerated by seeking to collect the entire balance and not just the amount actually due.

100.    ICS misrepresented the amount, character, and legal status of the debt it was collecting.

101.    ICS' attempt to collect the entire balance of Plaintiff's account was false, misleading, and confusing, and was an unfair and unconscionable means of collecting a debt.

102.    ICS violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – FDCPA

103.    Count II is brought against ICS.

104.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

17

105.     Exhibit E falsely represents to the unsophisticated consumer that the account balance will increase as a result of "finance charges" and "late charges."

106.     Neither the creditor nor ICS could collect late charges once the account had been accelerated.

107.     Upon information and belief, neither the creditor nor ICS intended to collect post-charge-off late charges or interest.

108.     ICS violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT III -- WCA

109.     Count III is brought against Mason.

110.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

111.     Mason misrepresented that Plaintiff had 10 days to pay before Mason would refer the account to a debt collector. Exhibit A.

112.     In fact, upon information and belief, Mason did not engage a third party debt collector to collect Plaintiff's debt even after the ten day period expired, and did not intend to do so when it mailed Exhibit B.

113.     Mason violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT IV -- WCA

114.     Count IV is brought against both Defendants.

115.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

116.    Exhibit A states that Plaintiff could make a minimum payment as late as August 25, 2017 but Exhibit B, mailed on August 13, 2017, represents the entire account balance was due.

117.    Mason misrepresented the amount of debt that was due and owing to Mason at the time Exhibit B was sent.

118.    Exhibit B states that the entire balance of Plaintiff's account was due as of August 13, 2017, but Exhibit C, mailed on August 29, 2017, states that Plaintiff could make a minimum payment as late as September 25, 2017.

119.    Mason misrepresented the amount due and attempted to collect portions of the balance that had not yet become due.

120.    ICS misrepresented the amount due and attempted to collect portions of the balance that had not yet become due.

121.    Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT V -- WCA

122.    Count V is brought against ICS.

123.    ICS is licensed as a Collection Agency by the Wisconsin Department of Financial Institutions.

124.    ICS attempted to collect portions of the balance that had not yet become due.

125.    ICS falsely represented the account as subject to the addition of interest and late fees when neither the creditor nor ICS intended to add interest or late fees to the balance.

126.    Exhibit E violates the FDCPA and can reasonably be expected to harass the consumer.

19

127.     ICS violated Wis. Stat. § 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

128.     Plaintiff brings this action on behalf of two classes.

129.     Class I ("Mason Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a series of account statements and collection letters in the form of Exhibits A, B, and C to the complaint in this action, (c) where the account statements sought only a minimum payment and the collection letters were mailed before the minimum payment due date stated in the account statements but sought the entire balance, (d) where Mason was attempting to collect an alleged debt, incurred for personal, family or household purposes, (e) and where the final account statement was mailed between May 22, 2017 and May 22, 2018, inclusive, (f), and the letters and statements were not returned by the postal service.

130.     Class II ("ICS Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent an account statement and collection letter in the form of Exhibits D and E to the complaint in this action, (c) where the letter in the form of Exhibit E was mailed prior to the payment due date stated in Exhibit D and attempted to collect the entire balance of the account, (d) where the alleged debt ICS attempted to collect was incurred for personal, family or household purposes, (e) and ICS' letter was mailed between May 22, 2017 and May 22, 2018, inclusive, (g) and was not returned by the postal service.

131.     Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

132.     There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members.

The predominant common questions are whether Exhibits D and E violate the FDCPA and WCA, and whether Exhibits A-C violate the WCA.

133.    Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

134.    Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

135.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

136.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a)    injunctive relief;

(b)    actual damages;

(c)    statutory damages;

(d)    attorneys' fees, litigation expenses and costs of suit; and

(e)    such other or further relief as the Court deems proper.

Dated:  May 22, 2018

**ADEMI & O'REILLY, LLP**

By:    s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)

21

3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com